1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION
CASE NO. 1:17-CR-00777-JMC

UNITED STATES OF AMERICA,                    AUGUST 21, 2019
                                             9:36 A.M.
                    Plaintiff,



        vs.



ANN CARROLL; TINA GORMAN;
RACHEL McNALLY; BETTY SHERLOCK;
SANDRA SHERLOCK,

                    Defendants.        PAGES 1 THROUGH 42
_____

                TRANSCRIPT OF SENTENCINGS
        BEFORE THE HONORABLE J. MICHELLE CHILDS
            UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR THE PLAINTIFF:      Mr. James H. May, AUSA
                        OFFICE OF U.S. ATTORNEY
                        1441 Main Street
                        Suite 500
                        Columbia, SC 29201


FOR THE DEFENDANTS:     Mr. Ryan L. Beasley, Esq.
                        RYAN L. BEASLEY LAW OFFICE
                        650 E. Washington Street
                        Greenville, SC 29601


STENOGRAPHICALLY        Ms. Carly L. Horenkamp, RDR, CRR, CRC
REPORTED BY:            Official Court Reporter
                        U.S. DISTRICT COURT
                        901 Richland Street
                        Columbia, SC 29201
                        954.557.5504

1                        **I  N  D  E  X**

2     *Certificate* -------------------------------------------- 42

3

4                                                         PAGE

5     ANN CARROLL      - SENTENCE IMPOSED              28

6     TINA GORMAN      - SENTENCE IMPOSED              31

7     RACHEL McNALLY   - SENTENCE IMPOSED              39

8     BETTY SHERLOCK   - SENTENCE IMPOSED              33

9     SANDRA SHERLOCK - SENTENCE IMPOSED               18

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    (Open Court, 9:36 a.m.)

2        THE COURT:  Good morning.  Please take your seats.

3        COURTROOM DEPUTY:  Judge, we're just waiting on one

4    client.  So we're just waiting on Ryan to get that client here.

5        THE COURT:  Well, whoever he has here, we can at least

6    start with them.

7        COURTROOM DEPUTY:  Sure, sure.

8    (Pause.)

9        MR. BEASLEY:  Sorry, Judge, we're coordinating a lot

10   of different people.

11       THE COURT:  Okay.

12       MR. MAY:  Is she here?

13       MR. BEASLEY:  Yes.

14       THE COURT:  All right.  We ready?

15       MR. MAY:  Yes, Your Honor.  Today we have sentencings

16   in the matter of United States of America, it's entitled

17   John U. Carroll, et al.  It's 1:17-777.  For sentencing today

18   we have, first, Sandra Sherlock; next, Ann Carroll; Tina

19   Gorman; Betty Sherlock; and Rachel McNally.  All five

20   defendants are represented by Mr. Beasley.  As we discussed

21   earlier, because it is that they are all captioned under the

22   same case, charged with the same crime, which they pled guilty

23   to, which was a conspiracy, their plea agreements all mirror

24   one another.

25       We'd suggest, if the Court is okay with it, that we

09:39   1   can do one presentation of the 3553(a) factors and then go

2   through where the defense and the government believe that each

3   of the defendants fall on the range of sentences that the Court

4   has previously given considering each of these defendants'

5   individual and unique conduct.  We will then suggest where we

6   believe they fall and where we agree they fall, and then the

7   Court can sentence them each individually, but with the same

8   3553(a) presentation, if that is okay with the Court.

9         THE COURT:  That sounds good.

10         MR. MAY:  So should the defendants come before the

11   Court in this order, Sandra Sherlock, then Ann Carroll, Tina

12   Gorman, Betty Sherlock, and Rachel McNally.

13         Your Honor, a presentence report has been prepared.

14   There are no objections from either the government or the

15   defendants, and after you verify that with each of the

16   defendants, the government can then go through the 3553(a)

17   factors as well as putting on the record how we got here with

18   the plea agreements.

19         THE COURT:  All right.  Madam Clerk will swear you all

20   in.

21         COURTROOM DEPUTY:  If you would all raise your right

22   hands to be sworn.

23    ANN CARROLL; TINA GORMAN; RACHEL McNALLY; BETTY SHERLOCK;

24           SANDRA SHERLOCK, DEFENDANTS, SWORN

25         THE COURT:  Okay.  Thank you.  All right.  So

09:42  1    beginning with Ms. Sandra Sherlock, have you had the

2    opportunity to go over your presentence investigation report

3    with your attorney?

4            DEFENDANT SANDRA SHERLOCK:  Yes, ma'am.

5            THE COURT:  And you understand that there are no

6    objections factually or legally to the report?

7            DEFENDANT SANDRA SHERLOCK:  Yes, Your Honor.

8            THE COURT:  Okay.  And so you have pled guilty to

9    conspiracy to commit wire and mail fraud and structure

10    transactions to evade reporting requirements, correct?

11            DEFENDANT SANDRA SHERLOCK:  Yes, Your Honor.

12            THE COURT:  Your base offense level is a 6, and that's

13    been determined from the substantive offense, which is mail

14    fraud and wire fraud, and so you were given that base offense

15    level of 6.  And then with respect to conspiracy to structure

16    transactions to evade reporting requirements, that base offense

17    level is a 12.  Combined, when you have the 6 and the 12, they

18    take the higher offense level, and so you have a 12 as your

19    offense level.  You got two levels of credit for acceptance of

20    responsibility, and then a total offense level of 10.  Is that

21    what you understand?

22            DEFENDANT SANDRA SHERLOCK:  Yes, Your Honor.

23            THE COURT:  Okay.  And then I look on your presentence

24    report with respect to the financial statement and you still

25    have on here Midland Life Insurance whole life policy.  Can you

09:43    1    tell me who is the policy in the name of and who the

2    beneficiary is?

3    DEFENDANT SANDRA SHERLOCK:  The policy is on John

4    Sherlock.

5    THE COURT:  And who is that?

6    DEFENDANT SANDRA SHERLOCK:  My father.

7    THE COURT:  Okay.

8    DEFENDANT SANDRA SHERLOCK:  And the beneficiary is

9    myself, Your Honor.

10    THE COURT:  Okay.  All right.  And then with respect

11    to your guideline calculation, in this case there were plea

12    agreements and they started out at a guideline with offense

13    level of 19, and then once you've gotten the credits,

14    appropriate credits, it gets to a 16.  Your case fell below, so

15    it was a total offense level of a 10, with your criminal

16    history category of I.  Your guidelines suggest that you are

17    eligible for probation or a sentence of 6 to 12 months,

18    followed by one to three years of supervised release.  Your

19    fine is not calculated due to your inability to pay.  There is

20    no restitution or money owed here.  And you have a $100 special

21    assessment fee.  Is that what you understand?

22    DEFENDANT SANDRA SHERLOCK:  Yes, Your Honor.

23    THE COURT:  Okay.  And then the Court adopts the

24    sentencing -- presentence investigation report for you.

25    All right.  With respect to Ms. Ann Carroll, again, no

09:44   1   objections to the presentence report, but you did plead guilty

2   to Count 1 of the indictment, conspiracy to commit wire and

3   mail fraud, and structure transactions to evade reporting

4   requirements.  Is that what you understand?

5           DEFENDANT ANN CARROLL:  Yes, Your Honor.

6           THE COURT:  Okay.  You have a base offense level of

7   18, with that substantive offense also being mail fraud and

8   wire fraud, and your offense level is higher because the loss

9   exceeds $250,000, but not $550,000.  And then for the base

10   offense level for conspiracy to structure transactions to evade

11   reporting requirements, that substantive offense is -- I mean,

12   base offense level is 14 in that the value of the funds

13   exceed 95,000 but less than $150,000.  So out of the 18 and the

14   14, then your combined adjusted offense is the higher of the

15   two, which is the 18.  You got two levels off for accepting

16   responsibility, one level off for entering a timely guilty

17   plea, so your total offense level is a 15.  Again, with a plea

18   agreement that started out where it was agreed that the base

19   offense level would be 19 and then you got three levels of

20   credit for 16, yours again fell a little below that, so that's

21   a total offense level of 15, criminal history category of I.

22           The guidelines suggest that you are not eligible for

23   probation, but instead should have a prison sentence of 18 to

24   24 months, followed by one to three years of supervised

25   release.  No fine calculated due to your inability to pay, but

09:45   1   you would owe restitution in the amount of $336,060.48 and a

    2   special assessment fee of $100.  Is that what you understand?

    3         DEFENDANT ANN CARROLL:  Yes, Your Honor.

    4         THE COURT:  Okay.  Then as to Tina Gorman, having pled

    5   guilty to -- and I adopt the presentence report with respect to

    6   Ms. Ann Carroll and also with the remaining defendants as well

    7   since there are no objections to the report.

    8         But Ms. Tina Gorman, you went over your presentence

    9   investigation report as well?

   10         DEFENDANT TINA GORMAN:  Yes, Your Honor.

   11         THE COURT:  And it has you having pled guilty to

   12   Count 1, conspiracy to commit wire and mail fraud, and

   13   structure monetary transactions to evade reporting

   14   requirements.  Your offense level is an 18, in that the

   15   substantive offense, again, being mail fraud and wire fraud,

   16   and the loss exceeding $250,000 but not $550,000.  And your

   17   base offense level for conspiracy to structure transactions to

   18   evade reporting requirements is a 16, and that the combined

   19   offense level, again, you take the higher of the two, so that's

   20   an 18, minus two levels for accepting your responsibility, and

   21   another level for entering a timely guilty plea, giving you a

   22   total offense level of 15.  Is that what you understand?

   23         DEFENDANT TINA GORMAN:  Yes, Your Honor.

   24         THE COURT:  Okay.  And then when we go to the page of

   25   assets, it shows that you're paying life insurance at the

09:47   1    amount of $2,063 a month.  Can you tell me what that life

        2    insurance is for, like on whose life?

        3            DEFENDANT TINA GORMAN:  $2,000 a month?

        4            THE COURT:  Yes.

        5            DEFENDANT TINA GORMAN:  No, Your Honor.

        6            THE COURT:  Okay.  That's what's on your financial

        7    declaration here.

        8            DEFENDANT TINA GORMAN:  That's not for the year?

        9            THE COURT:  Is that what?

       10            DEFENDANT TINA GORMAN:  Is it for the year?

       11            THE COURT:  No, it's for the month.

       12            DEFENDANT TINA GORMAN:  No, Your Honor.

       13            THE COURT:  Okay.  Do you have any outstanding life

       14    insurance policies?

       15            DEFENDANT TINA GORMAN:  I have life insurance

       16    policies, but not that's 2,000-and-some-odd dollars a month,

       17    Your Honor.

       18            THE COURT:  Okay.  Who do you have a life insurance

       19    policy on?

       20            DEFENDANT TINA GORMAN:  My dad and my husband.

       21            THE COURT:  Okay.  And what's your father's name?

       22            DEFENDANT TINA GORMAN:  Eddie Sherlock.

       23            THE COURT:  Spell it?

       24            DEFENDANT TINA GORMAN:  Eddie, E-D-D-I-E, Sherlock,

       25    S-H-E-R-L-O-C-K.

09:48   1         THE COURT:  Oh, Sherlock, okay.  And then you said

2   also on your husband?

3         DEFENDANT TINA GORMAN:  On my husband, Pete Gorman.

4         THE COURT:  Okay.  Do you know the amounts?

5         DEFENDANT TINA GORMAN:  My husband's is 250,000, I

6   think, or 200,000, and my dad, I think -- I'm not absolutely

7   sure, Your Honor, because I have more than one.

8         THE COURT:  Okay.

9         DEFENDANT TINA GORMAN:  And I do have one on my mom;

10   it's for 200,000.

11         THE COURT:  Okay.  Well, you're going to be asked to

12   turn over all of those life insurance policies to probation so

13   that they can make sure that they are credible in the sense

14   that the companies and how you obtain them, because that's why

15   we're here, that there's fraudulent information being given on

16   the policies, suggesting that the persons who are insured,

17   their income perhaps has been inflated or your income has

18   perhaps been inflated to actually qualify for these policies.

19   Do you understand that?

20         DEFENDANT TINA GORMAN:  Yes, Your Honor.

21         THE COURT:  Okay.  Because my job is to make sure we

22   don't continue down the path of more crime in that regard and

23   that we turn over anything that is a result of the crime.  Do

24   you understand that?

25         DEFENDANT TINA GORMAN:  Yes, Your Honor.

09:49   1          THE COURT:  Mr. May?

2          MR. MAY:  Yes, Your Honor.  Just for the defendants'

3    edification, the government will be asking for a special

4    condition of probation being that all life insurance policies

5    that are held be provided to United States Probation so that

6    way they can make an evaluation whether or not they were taken

7    out in fraud, because what can happen is that fraud be

8    perpetrated while under the Court's supervision.

9          Additionally, the government will not prosecute for

10    any life insurance policies that are turned over.  However, if

11    we find out that you did not turn over policies, kept them and

12    then, you know, you collect on them, then we would view this as

13    a violation of any kind of supervised release and we'd then

14    seek imprisonment further against you because you hid something

15    that we believe would -- you know, was against an order of the

16    Court.  So just for everybody, that is something that we will

17    be asking that's been happening in virtually all the

18    sentencings.  I think we've had 53 sentencings thus far, so

19    that will be one of the conditions.

20          THE COURT:  Do you understand that?

21          DEFENDANT TINA GORMAN:  Yes, Your Honor.

22          THE COURT:  Okay.  And then, again, for the plea

23    agreement, which started out as a base offense level of 19 and

24    then with the credits you got to a 16, yours fell a little

25    short of that, so your total offense level is 15, criminal

09:50  1  history category of I.  The guidelines suggest that you are not

2  eligible for probation, but instead fall in a range of 18 to 24

3  months, followed by one to three years of supervised release.

4  No fine due to your inability to pay, you don't owe any

5  restitution, but you would owe the $100 special assessment fee.

6  Is that what you understand?

7           DEFENDANT TINA GORMAN:  Yes, Your Honor.

8           THE COURT:  Okay.  We next move to Betty Sherlock, who

9  you also pled guilty to Count 1, conspiracy to commit wire and

10  mail fraud, and your base offense level would be a 20, in that

11  your loss exceeds $550,000 but not 1.5 million.  And then for

12  the base offense level for conspiracy to structure transactions

13  to evade reporting requirements, the value of those funds

14  exceed 40,000 but not 95, and so that gives you a base offense

15  level of 12.  We take the higher of the two, so that would be a

16  20, minus 2 levels for -- as to credit for acceptance of

17  responsibility, and then another level for entering a timely

18  guilty plea, for a total offense level of 17.  Is that what you

19  understand?

20           DEFENDANT BETTY SHERLOCK:  Yes, Your Honor.

21           THE COURT:  Okay.  And then with that same plea

22  agreement in place, your total offense level fell a little

23  short -- well, actually, came in line with that, so it's a

24  total offense level of 17, your criminal history category of I,

25  not eligible for probation.  Instead, guidelines recommend 24

09:51   1    to 30 months' imprisonment, followed by one to three years of

2    supervised release.  No fine is calculated due to your

3    inability to pay.  Is that what you understand?

4           DEFENDANT BETTY SHERLOCK:  Yes, Your Honor.

5           THE COURT:  Okay.  And then finally, we get to Rachel

6    McNally, who has pled also guilty to Count 1, conspiracy to

7    commit wire and mail fraud, and then having a base offense

8    level of 22, in that your loss exceeded 1.5 million but is less

9    than 3.5 million.  And then you got an adjustment for two

10   levels for credit for accepting responsibility, another level

11   for entering a timely guilty plea, for a total offense level of

12   19.  Again, the original plea agreements had a base offense

13   level of 19, which would have given you an adjusted offense

14   level of 16, but your total offense level actually falls

15   higher.  So that's a 19, with a criminal history category of I.

16   Again, the guidelines suggest you're not eligible for

17   probation, but instead fall in the range of 30 to 37 months for

18   imprisonment, followed by one to three years of supervised

19   release.  No fine calculated due to your inability to pay.  You

20   would owe restitution in the amount of $14,832, followed by a

21   $100 special assessment fee.  Is that what you understand?

22          DEFENDANT RACHEL McNALLY:  Yes, ma'am.

23          THE COURT:  Okay.  And I'll need you to speak up,

24   okay?

25          DEFENDANT RACHEL McNALLY:  Yes, Your Honor.

09:53    1          THE COURT:  Okay.  All right.  Government, we'll hear

2    with respect to the factors.

3          MR. MAY:  Your Honor, first, I'd ask that the Court

4    adopt the plea agreements because they're all 11(c)(1)(C) and

5    adopt the plea agreements and then normalize everybody's

6    guidelines by the 16.

7          THE COURT:  Okay.  The plea agreements are adopted.

8          MR. MAY:  Your Honor, the Court is well aware of the

9    underlying criminal enterprise that the defendants are a member

10    of and pled guilty to being a member of.  Your Honor, the

11    3553(a) factors are that, taking into consideration the nature

12    and seriousness of this crime, what we have is we have a

13    longitudinal crime that each of the defendants committed.

14          Specifically, for Sandra Sherlock, she was

15    structuring, food stamps, and vehicle financing fraud.

16          For Ann Carroll, we have structuring, life insurance

17    fraud, we have tax fraud, and we have vehicle financing fraud.

18          For Tina Gorman, we have life insurance fraud, food

19    stamp fraud, and structuring.

20          For Betty Sherlock, we have structuring, life

21    insurance fraud, and food stamp fraud.

22          For Rachel McNally, we have life insurance fraud, tax

23    fraud, and food stamp fraud.

24          Your Honor, the one thing I would note for Betty

25    Sherlock is that her husband, Michael Sherlock, has been

09:54    1    sentenced before Your Honor previously, he received a 90-day

2    sentence, and they have comparable criminal conduct.  As you've

3    seen with married couples, it pretty much mirrors one another,

4    and so for Ms. Betty Sherlock, we would ask the Court for a

5    90-day sentence so that way we don't have sentencing

6    disparities.

7           THE COURT:  And her husband is who again?

8           MR. MAY:  Michael Sherlock.  I believe he is currently

9    in the Bureau of Prisons.

10           THE COURT:  Okay.

11           MR. MAY:  Your Honor, so as we're looking at the

12    various 3553(a) factors, as we're instructed to do, Your Honor,

13    we'd look at, you know, the respect for the law.  Again, I

14    think that this case shows that we have a group of folks who

15    are in this conspiracy who have had very little respect for the

16    law.  We hope that the Court's sentencings of not only these

17    five defendants, but the others, will send a message, the

18    deterrence factor that 3553(a) talks about.

19           Again, I keep going back, and I know you're tired of

20    hearing it, but what Johnny Mack said, the very first defendant

21    who was sentenced, is the fact that people from my neighborhood

22    are going to prison means something.  We all know each other,

23    and the fact that these folks are facing prison time is a

24    meaningful thing going forward.  It means something to our

25    group.

09:55

1        Your Honor, they are a criminal enterprise and I hope

2    that this entire investigation will have a deterrence effect, a

3    specific deterrence effect within the community itself.

4        I think at the end of it, over 60 individuals will be

5    sentenced, the vast majority of them going to prison for

6    various times.  Again, Your Honor, for these defendants I think

7    a deterrence factor is a very real thing.

8        Your Honor, talking about the sentencing

9    discrepancies, to ensure that they are all in line, while I

10   think that the 3553(a) factors are talking about nationwide so

11   that way there's not discrepancies, you know, for the people in

12   the Northern District of California as opposed to the District

13   of South Carolina, I think that this case is unique and I think

14   the Court has done a good job of tracking where each individual

15   falls within a spectrum of criminal conduct.

16       Mr. Beasley, I have to commend, he went through the

17   last about 25 sentencings and he gave his opinion of where each

18   of these five defendants fell.  While I believe it was a little

19   generous, we were able to come to a consensus of where both of

20   us are comfortable and where the defendants are comfortable for

21   us recommending to the Court.

22       So, Your Honor, if it's okay, I will go through in

23   order --

24       THE COURT:  Okay.

25       MR. MAY:  -- where we believe that these five

09:57

defendants should fall.

Your Honor, first, for Sandra Sherlock, she has, by way of her calculation by United States Probation, that without the plea agreement it would be a probationary sentence. Your Honor, the government would not object to a variance to probation. She does not owe restitution.

As far as Ann Carroll, we'd suggest a four-month sentence in the Bureau of Prisons. As far as Tina Gorman -- I'm sorry, Ann Carroll also has approximately $353,000 of restitution owed. Ann Carroll has approximately 353,000. There's some change in there, but I know probation has calculated it and it's contained in the presentence report.

As far as Tina Gorman, we'd suggest five months. It does not appear that she owes restitution.

Betty Sherlock. Again, Betty Sherlock, we would ask for the same sentence that her husband got. I believe it is lower, but to try to be in conformity and treat her the same way that her husband Michael was treated, that would be a 90-day sentence.

And then for Rachel McNally, a nine-month sentence. Rachel McNally owes $14,832 in restitution.

I'm happy to answer any questions the Court may have.

THE COURT: Okay. Well, once I hear mitigation, I'll see if there's anything else.

Okay. So let's start with Sandra Sherlock.

09:58  1          MR. BEASLEY:  Your Honor, I think Sandra's pretty
       2     simple.  We're all good with probation.  There's no restitution
       3     due to no actual loss.  The presentence report came back at 6
       4     to 12 months, Zone B, so she's eligible for probation, and the
       5     government and the defense are in agreement with probation.
       6          THE COURT:  Okay.  And Ms. Sherlock, is there anything
       7     you'd like to state?
       8          DEFENDANT SANDRA SHERLOCK:  No, Your Honor.
       9          THE COURT:  Okay.  One moment.  Okay.  Ms. Sandra
      10     Sherlock had a guideline provision that did make her probation
      11     eligible, so I believe that with respect to any sentencing
      12     disparities, that I would agree with that sentence, so she
      13     would be probation for a period of -- let me ask the probation
      14     agent, how long should the period of probation be?
      15          PROBATION OFFICER:  If you look at similarly situated
      16     defendants, it would be five years.
      17          THE COURT:  Okay.  All right.  So you'll be sentenced
      18     to probation for five years.  It appears you don't have the
      19     ability to pay a fine.  Therefore, your fine is waived, but
      20     you'll pay the mandatory $100 special assessment fee.  And then
      21     is there still a preliminary order of forfeiture on hers?
      22     Okay.  So we'll keep that in place.
      23          MR. MAY:  Your Honor, I don't believe there is
      24     forfeiture in her case, so we'd dismiss it at that time.
      25          THE COURT:  Okay.

10:00  1          MR. MAY:  Your Honor, as we've been doing in all these

2     cases, I'd ask for the special conditions being that she cannot

3     take out life insurance policies without the express permission

4     of United States Probation while under supervision.

5          THE COURT:  And that would take care of all of them.

6          MR. MAY:  Right.  As well as that she provides any

7     life insurance policy that she is the beneficiary and owner or

8     the insured to United States Probation so that way they can

9     make a determination as far as whether or not they were taken

10    out in fraud.

11         Your Honor, the other condition we've asked for every

12    case is that if there are any minors living in the household

13    with these individuals, that they attend public schooling

14    through the years of -- well, until they're 18 years of age.

15    Again, education is the only way that we can break the cycle.

16    I think that you see in the presentence reports of these five

17    women, as well as virtually every other woman and man that has

18    come in front of you, is we see a lack of education as a way

19    that the children cannot leave this insular criminal

20    enterprise.

21         THE COURT:  Okay.

22         MR. MAY:  Without education, it will perpetuate.  So

23    we'd ask that a special condition be that each -- anybody who

24    has a minor child living in the house be required to send that

25    child to school.

10:01    1        THE COURT:  Okay.  All of those conditions will stand

2    for all defendants.

3        Additionally, to you, Ms. Sherlock, you'll provide the

4    probation office with access to all of your financial

5    information, and that will include income tax returns and bank

6    statements, and then you will not open any additional lines of

7    credit without the approval of the probation office.

8        So just so that everybody is clear, the standard

9    conditions for your probation and/or if you are sentenced and

10   then you have supervised release to follow are that you cannot

11   take out any life insurance policy without approval from the

12   probation department, you'll have to turn over all policies

13   that you currently have in your possession to the probation

14   department so they can determine whether or not those are

15   credible and truthful policies.  All minors in your household

16   will attend public schooling.  You cannot open additional lines

17   of credit without the approval of probation.  And then

18   probation is also able to have access to all requested

19   financial information.

20        Do you understand that particularly, since we're on

21   your sentencing, Ms. Sherlock?

22        DEFENDANT SANDRA SHERLOCK:  Yes, Your Honor.

23        THE COURT:  Okay.  And then you have a right to

24   appeal, but you also, in paragraph 6 of your written plea

25   agreement, agree to waive the right to contest the conviction

10:02    1    or the sentence in any direct appeal or post-conviction

2    proceedings, including 28 U.S.C. 2255.  Do you understand that?

3              DEFENDANT SANDRA SHERLOCK:  Yes, Your Honor.

4              THE COURT:  If you were to appeal, you would have to

5    do so timely through yourself or your lawyer.  Do you

6    understand that?

7              DEFENDANT SANDRA SHERLOCK:  Yes, Your Honor.

8              THE COURT:  Okay.  Anyone object to the form of her

9    sentence?

10              MR. MAY:  No, Your Honor.

11              MR. BEASLEY:  No, Your Honor.

12              THE COURT:  Okay.  All right.  I find it's sufficient

13    but not greater than necessary to achieve the sentencing

14    factors.

15              Okay.  You can step back.  Thank you.

16              All right.  Let's move on to Ann Carroll.  I'm sorry,

17    Betty Sherlock, who is standing next, right?  I'm sorry, I got

18    them out of order now.  You are?  I'm sorry.

19              DEFENDANT ANN CARROLL:  Ann Carroll.

20              THE COURT:  Ann Carroll.  So yeah, I was right then.

21    All right.  Let's do that.

22              MR. MAY:  Your Honor, I've already gone over the

23    3553(a) factors.

24              THE COURT:  Right.  I'm sorry, I'm waiting on --

25              MR. MAY:  Mr. Beasley?

10:03   1          THE COURT:  Yes.

2          MR. BEASLEY:  Are you waiting on me?

3          THE COURT:  Yes.

4          MR. BEASLEY:  Okay.  Your Honor, I did file a motion

5    for variance, and one thing I would like to address is the loss

6    amount in the presentence report came back at

7    $336,000 -- $336,060.48.  One of the arguments we were using,

8    and I don't believe the government is going to have an

9    objection to this, if you take all the premiums that were paid,

10    some were 13 years, 10 years, 6 years, 6 years, if you take all

11    the premiums that were paid over that amount of time, the real

12    loss amount would be reduced to $122,430.56.  I would ask that

13    the Court order that that be the loss amount instead of the 336

14    just based on that, you know, it's an offset, so to speak,

15    because the insurance company would be basically double-dipping

16    if they were able to get all the premiums back and they didn't

17    have to pay the policy limits.

18          MR. MAY:  Your Honor, I think that he's talking about

19    restitution.  I think loss amount is the intended loss amount.

20          THE COURT:  Right.

21          MR. MAY:  So loss amount should stay static.  As far

22    as restitution, we have no objection to that.  There should not

23    be unjust enrichment.

24          MR. BEASLEY:  That is what I meant.

25          THE COURT:  Okay.  Thank you.  Okay.

10:05

1          PROBATION OFFICER:  Sorry, Your Honor.  Could you say

2     the amount one more time?

3          MR. BEASLEY:  It's $122,430.56.  That's in my variance

4     motion if you need that.

5          PROBATION OFFICER:  Thank you.

6          MR. BEASLEY:  Okay.

7          MR. MAY:  So that's the life insurance.  I believe

8     there's still an outstanding 17,582 for the IRS.

9          MR. BEASLEY:  And we're prepared to pay that, Your

10    Honor.  We'll have that paid this week.  I actually forgot the

11    check at my office, but I'll have that this week.

12          THE COURT:  Okay.

13          MR. BEASLEY:  Your Honor, you know, Ann, like, you

14    know, a lot of individuals from North Augusta, I mean, they

15    really are -- I mean, I've got to know a bunch of them over the

16    last couple of years here and, you know, they're good people.

17    I mean, they're -- you know, a lot of them are raised to think

18    it's normal to get involved in these situations and, you know,

19    a lot of them are uneducated, you know, can't read or write

20    very well.  You know, they get steered by some of, you know,

21    people that are the accountants or car salesmen or whoever, I

22    mean, because those people are profiting as well, and they get

23    steered into these things really sometimes not knowing any

24    better.

25          But, you know, it's -- they realize now, I can tell

10:06  1   you, from all of what's going down that I guarantee you you

2   won't see them back in here.  I know that.  They have been

3   great clients.  They have -- I've met with them, I can't even

4   imagine how many times, and talked to them how many times over

5   the past two years.  It's been incredible how much I've talked

6   to them.  But I say all that because, you know, they don't have

7   records.  They are good people.  And the government, you know,

8   in Ann's specific case, the government's wanting four months.

9       You know, one thing I'll say about Ann, she is --

10  she's kind of taking care of her dad, Eddie Sherlock, at this

11  time, because Eddie's wife, Patricia, is in jail.  She got 90

12  days and she was similarly situated, but Ann's kind of the

13  primary caregiver of her dad at this time.  He's dealing with

14  all kinds of medical issues, he's diabetic.  I know he just had

15  his -- I think he possibly has cancer on his lymph nodes.

16      But, you know, the government and I, we have agreed to

17  four months, but I know that Ann and her husband would ask the

18  Court to consider something different.  But I understand

19  what --

20          MR. MAY:  Objection, objection.  Wait a second.

21          MR. BEASLEY:  I understand what we agreed to.  I'm

22  just saying they wanted something different, but we have agreed

23  to the four months.  That's all I'm saying.

24          MR. MAY:  I'm happy to say that -- I'm happy to

25  advocate for where I believe she should fall, which is

10:08  1   significantly higher, if that's what Mr. Beasley is trying to

2   do, trying to backdoor something that --

3         THE COURT:  Well, he needs to place his client's

4   position on the record, so that's what I took it as.

5         MR. BEASLEY:  And that's all, Your Honor.

6         THE COURT:  Okay.  So for Ann Carroll, just to be

7   clear, the restitution amount based on my agreeing to the

8   credit for the reduction in premiums is $122,430.56.  Her

9   restitution to the IRS is $17,582.

10        MR. BEASLEY:  That's correct.

11        MR. MAY:  Yes, ma'am.

12        THE COURT:  Okay.  So that's an even number.  Okay.

13        MR. MAY:  Your Honor, real quick.

14        THE COURT:  Sure.

15        MR. MAY:  I think we need to address a few things.

16   Number one, as the Court has seen, just because you don't have

17   a previous record, we have a conspiracy that is over decades.

18   The criminality, which we can show, is that this is not a

19   first-time offense.  This is not an offense of a single

20   conduct.  It's not a crime of opportunity.  It's not a crime of

21   passion.  It is a lifestyle.  Good people?  Good people don't

22   lie when it benefits them.  This is a criminal enterprise that

23   benefited from lies.  They lied.  And this woman lied to the

24   banks, to life insurance, to the government, and when she's

25   financing vehicles.  It's not a single time thing.  And I think

10:09  1    that what that presentation does is it just mischaracterizes

2    the criminality of what each of these defendants did.

3         Were they raised this way?  Absolutely.  However, at

4    some point when they become an adult, they can choose not to

5    lie.  They didn't.  I hope this will stop that, but as the

6    Court has seen, and the Court has admonished similar defendants

7    who raised that same argument, is that this is not something

8    that just happened.  This is something that was ingrained in

9    her lifestyle.  And so, Your Honor, I believe that presentation

10   does not take into account the seriousness of the crime or what

11   this criminal enterprise does.

12        THE COURT:  Okay.  And then Ms. Carroll, anything

13   you'd like to state?

14        DEFENDANT ANN CARROLL:  I'm just sorry, Your Honor,

15   for anything that I've done and I -- you know, I vow never to

16   do nothing like that ever again, and I ask for mercy of the

17   Court.

18        THE COURT:  And you do understand that despite not

19   having a prior record, when you're doing something over time,

20   each offense essentially is a crime.

21        DEFENDANT ANN CARROLL:  Yes, ma'am.

22        THE COURT:  Each transaction is a crime.

23        DEFENDANT ANN CARROLL:  Yes, ma'am.

24        THE COURT:  Okay.

25        DEFENDANT ANN CARROLL:  I'm truly sorry, Your Honor.

10:11  1          THE COURT:  Are you married to anybody who is part of

2    the criminal enterprise that has been, you know, indicted or

3    pled on information?

4          DEFENDANT ANN CARROLL:  No.  My mom -- my mom, like he

5    stated, and -- just my mom.

6          THE COURT:  Okay.

7          DEFENDANT ANN CARROLL:  I am married, Your Honor,

8    but...

9          THE COURT:  And who is your mother again?

10          DEFENDANT ANN CARROLL:  Patricia Sherlock.

11          THE COURT:  Okay.

12          MR. BEASLEY:  She got 90 days, Your Honor.

13          DEFENDANT ANN CARROLL:  My father is, like he said,

14    you know, having some problems now and I am helping him.

15          THE COURT:  Uh-huh.  I think I might have taken that

16    into consideration for her.

17          MR. MAY:  Your Honor, I believe you did, because where

18    she falls on the guidelines, that was one where the Court went

19    significantly lower than where the government was -- believed

20    she fell.

21          THE COURT:  Right.

22          MR. MAY:  I believe it was because of the ailments of

23    the father.

24          THE COURT:  Right, uh-huh.

25      (Pause.)

10:14

1    THE COURT:  Okay.  Having calculated and considered

2    the advisory sentencing guidelines and having also considered

3    the relevant statutory sentencing factors contained in

4    18 U.S.C. Section 3553(a), it is the judgment of the Court that

5    the defendant, Ann Carroll, is hereby committed to the custody

6    of the Bureau of Prisons for four months.

7    It is further owed, the amount of restitution that we

8    indicated, payable to the Clerk.  It appears you don't have the

9    ability to pay a fine, therefore, the fine is waived, but

10    you'll pay the mandatory $100 special assessment fee.

11    And then you heard me earlier state all the conditions

12    that you would have as well, and you'll be followed on

13    supervised release for a term of two years with those special

14    conditions that we indicated.

15    Any unpaid balance of your restitution shall be paid

16    in a minimum monthly installment rate of no less than $100 per

17    month, and that will begin in 30 days after you're released

18    from imprisonment, and as I indicated, those other set of five

19    conditions will apply.

20    With respect to your ability to appeal the sentence,

21    I'd just remind you that in paragraph 6 of your written plea

22    agreement, you agreed to waive the right to contest either the

23    conviction or the sentence in any direct appeal or

24    post-conviction action, including any proceedings under

25    28 U.S.C. Section 2255.  If you decide to appeal, you need to

10:15    1    do so timely on your own or through your lawyer.  Do you

2    understand that?

3         DEFENDANT ANN CARROLL:  Yes, Your Honor.

4         THE COURT:  Okay.  Any objection to the form?

5         DEFENDANT ANN CARROLL:  No, Your Honor.

6         MR. MAY:  No, Your Honor.

7         MR. BEASLEY:  No, Your Honor.

8         THE COURT:  Okay.  I find it sufficient but not

9    greater than necessary to achieve the sentencing factors.

10    Thank you.  You can step down.

11         Next is Tina Gorman.  Okay.  Mr. Beasley?

12         MR. BEASLEY:  Your Honor, the government and I have

13    discussed and come to agreement of five months for Ms. Gorman.

14    There is no restitution and no actual loss.  She has three

15    children at home with a 23-year-old daughter that however

16    doesn't drive, and a 13-year-old son and a three-year-old

17    grandson.  We'd just ask that you consider all of that and go

18    along with the agreement that the government and I have come

19    to --

20         THE COURT:  Thank you.

21         MR. BEASLEY:  -- along --

22         THE COURT:  And -- go ahead.  I'm sorry.

23         MR. BEASLEY:  I was just saying, the agreement that

24    we've all come to.

25         THE COURT:  Okay.  And then Ms. Gorman, anything you'd

10:16   1   like to state?

2               DEFENDANT TINA GORMAN:  I'm sorry, Your Honor, for

3   what I've done.  I promise I'll never do it again.

4               THE COURT:  Okay.  In your case, I just want to remind

5   you that you'll need to turn over all those life insurance

6   policies, because your financial expense sheet here does

7   indicate you're paying over $2,000 a month for life insurance

8   and that's what's at issue in this case.

9               DEFENDANT TINA GORMAN:  I'm sorry, Your Honor, I

10   thought you said $2,000 just for one policy.

11               THE COURT:  No, for all of them.

12               DEFENDANT TINA GORMAN:  Oh, I did turn over everything

13   to Mr. Beasley's office, everything, so I thought you meant one

14   policy.

15               THE COURT:  No, not just for the one, it could be for

16   several, but life insurance as a category.

17               DEFENDANT TINA GORMAN:  That is probably right, Your

18   Honor.

19               THE COURT:  Okay.

20               DEFENDANT TINA GORMAN:  I thought you meant it was one

21   individual policy.

22               THE COURT:  Okay.  But you understand that's a

23   significant amount monthly.

24               DEFENDANT TINA GORMAN:  I did bring -- I did bring

25   everything over to Mr. Beasley's office.

10:17   1     THE COURT:  Okay.  All right.  So those will be turned

2     over to probation and then they'll be checking those out.

3           DEFENDANT TINA GORMAN:  Yes, Your Honor.

4           THE COURT:  Okay.  So I will accept the agreement of

5     the five months between the government and defense counsel, and

6     so you'll be committed to the custody of the Bureau for a

7     period of five months.  You don't have the ability to pay a

8     fine, therefore, your fine is waived, but you'll pay the

9     mandatory $100 special assessment fee.

10          You'll have those same five conditions that we've

11    indicated, but those will be relevant to your term of

12    supervised release, which you'll serve for a period of two

13    years.

14          So within 72 hours of being released from the custody

15    of the Bureau of Prisons, you have to report in person to the

16    probation office, and they'll explain that to you again.

17          And then while on supervised release, all of those

18    conditions that we spoke about earlier, you'll have to abide by

19    those.  And particularly, essentially they will be serving as a

20    check on all of your financial transactions, essentially.  At

21    any moment when they just want to know anything about you, in

22    terms of financial information, tax returns, bank statements,

23    you'll have to turn it over to them.  And then you can't open

24    any additional lines of credit with them as well.  And of

25    course, as I indicated earlier, you turn over all of your

10:18   1    policies and you can't get any new policies without them

2    knowing.  The government is not going to prosecute on anything

3    that is in current now, but if it's an illegal policy based on

4    fraudulent information, they will make sure that it's

5    terminated.  Do you understand that?

6            DEFENDANT TINA GORMAN:  Yes, Your Honor.

7            THE COURT:  Okay.  You also agreed to waive the right

8    to appeal in your plea agreement, which has been adopted, all

9    of them have been adopted, and if you wish to appeal for any

10   reason, then you would still need to do so timely through your

11   lawyer or through yourself.  Do you understand that?

12           DEFENDANT TINA GORMAN:  Yes, Your Honor.

13           THE COURT:  Any objection to the form of the sentence?

14           MR. MAY:  No, Your Honor.

15           MR. BEASLEY:  No, Your Honor.

16           THE COURT:  Okay.  And I find it sufficient but not

17   greater than necessary to achieve the sentencing factors.

18   Okay.  You can step down as well.

19           We next move to Betty Sherlock.

20           DEFENDANT BETTY SHERLOCK:  Yes, Your Honor.

21           THE COURT:  Okay.

22           MR. BEASLEY:  Your Honor, the government and the

23   defense have come to an agreement of 90 days.  Betty has no

24   restitution, no actual loss amount.  Her husband, Michael,

25   received a 90-day sentence as well.  He is currently in jail.

10:20  1   His release date is October 13th.  The one thing, and we could

2   probably do this after sentencing, but might as well do it

3   today, we'd ask that her report date be delayed until after

4   that date just to give -- so somebody's home to take care of

5   family members.

6            THE COURT:  Certainly.  Okay.

7            All right.  I'm happy to hear from you, Ms. Sherlock.

8            DEFENDANT BETTY SHERLOCK:  I just want to say I'm very

9   sorry, Your Honor.  I'll never do it again, Your Honor, and I'm

10  sorry.

11           THE COURT:  Okay.  All right.  I will sentence you to

12  the Bureau of Prisons for a period of 90 days.  I'll accept

13  that agreement.  It appears you don't have the ability to pay a

14  fine, therefore, your fine is waived, but you'll still owe

15  the $100 mandatory special assessment fee.

16           And then once you are done with your sentence, and I

17  will have you a delayed report date so it will be not before

18  November 1st, and then you will come out and then you'll report

19  to the probation office in the district in which you are

20  released within 72 hours, and you'll be placed on supervised

21  release for a term of two years with those same conditions that

22  we just indicated.

23           I'll remind you that in terms of any appeal, you

24  agreed to waive the right to appeal in your plea agreement, but

25  if you wish to do so, you would have to do so timely through

10:21  1    your lawyer or on your own.  Do you understand that?

2              DEFENDANT BETTY SHERLOCK:  Yes, Your Honor.

3              THE COURT:  Okay.  Any objection to the form of the

4    sentence?

5              MR. MAY:  No, Your Honor.

6              MR. BEASLEY:  No, Your Honor.

7              THE COURT:  Okay.  I find it sufficient but not

8    greater than necessary to achieve the sentencing factors.

9    Thank you.

10             DEFENDANT BETTY SHERLOCK:  Thank you.

11             THE COURT:  Okay.  And then now we have Rachel

12   McNally.

13             MR. BEASLEY:  Your Honor, the government and the

14   defense have come to an agreement of nine months.  This one

15   gives me a little more heartburn, but she has an actual loss

16   of $14,832 that she's prepared to pay.  She has three children,

17   they're triplets, ages 13, two boys and a girl.  She does have

18   to take them to occupational therapy every week as well as some

19   other tutoring and stuff on a weekly and monthly basis.  We'd

20   ask that you go along with the recommendation, Your Honor.

21             THE COURT:  Okay.  And then I'm happy to hear from

22   you, Ms. McNally.

23             DEFENDANT RACHEL McNALLY:  Your Honor, I'd just like

24   to say I'm sorry.  I've had a lot of time to reflect on my

25   probation.  I have seen my faults.  I've talked to my children

10:22

1  about my faults.  I have tried to be a better person.  I've put

2  in for a job at the school for a secretary job.  I didn't get

3  that, but I did get a sub job.  I'm trying to better my life as

4  a human being.  I live my day in and day out just taking care

5  of my son.  My son, Joel, he has a condition, he was diagnosed

6  at five years old, his body's allergic to food.  His meals have

7  to be prepared every day and brought to school by 11 o'clock.

8  I do that every day.  We go monthly.  Every three months he has

9  endoscopy, where they take biopsies of his body to make sure

10  that he is healing.

11       Day in and day out, I care for my children.  I live

12  for my children.  I beg you to have mercy upon me so I can

13  continue their care.  I have no one else to care for them.  My

14  husband works.  If he has to come home, there's no income.  I

15  beg you, please, please lighten my sentence so I can stay home

16  and take care of my children.  I have triplets, they do

17  occupational therapy, we do tutoring.  I have one son that goes

18  to Charleston every month for his asthma care.  My other son

19  goes to Medical College of Georgia.  I've got all their

20  documents.  I've presented everything.  I have made restitution

21  in March.  I've tried to better myself.  I've tried to better

22  for my children for their future.

23       My children have been in school since they were three

24  years old.  I've always wanted their education.  I do after

25  school.  I do everything to keep them, to make them better

10:24   1   children, better -- for their future.  I believe in their

2   future.  I've always believed in it.  I beg you, Your Honor, to

3   have mercy upon me.  I beg you.

4           THE COURT:  Who is it that lives in your house?

5           DEFENDANT RACHEL McNALLY:  Myself, my mother and

6   father, in and out.  She goes with my father for his care.  He

7   has high blood pressure.  She stays with him to care for him

8   while he works.  My father is not a well man.  They're home

9   here and there.  They're not home all the time.  It's just me

10   and my children.  I have documentation from the doctors stating

11   that I'm the one that brings him in for his care.

12           I beg you, Your Honor, I beg you to have mercy upon

13   me.  I beg you, so I can be a better mother.  I promise you, I

14   will make a better life for my children, I will be a better

15   mother, just give me the opportunity.  I know my faults and I

16   am truly heartfully sorry.  I beg you, Your Honor.

17           THE COURT:  Okay.  Mr. May?

18           MR. MAY:  Your Honor, she had the obligations that she

19   puts before the Court when she was committing these crimes.  In

20   the personal history, it says that her parents live with her

21   and that her mother does travel.  Her mother can stop traveling

22   and can help.  It also says that her husband Pete lives at the

23   house.  Your Honor, she had obligations when she committed the

24   crimes.  She had the same exact obligations when she committed

25   the crimes.

10:25    1           When we look at her assets, she reports

2    over $1.5 million of assets, largely from life insurance

3    policies.  It doesn't seem that she's stopped or hasn't

4    examined those.  Again, those will be provided to United States

5    Probation to see if they're fraudulent.  I think what we can

6    see is that she got here because she was committing fraud on

7    life insurance applications.  But also food stamps.  Food

8    stamps is something that she continually re-upped when she had

9    over $1.5 million worth of assets.  She has committed a crime

10    while she had these obligations.  It didn't stop her from

11    committing a crime then.

12           Your Honor, I believe that her guidelines are

13    significantly higher than what Mr. Beasley has negotiated down.

14    The government would otherwise be asking for a significantly

15    higher sentence but for the wonderful job that Mr. Beasley did

16    in negotiations.  So both parties are asking the Court for nine

17    months.  Is that low?  I think it is.  However, through

18    Mr. Beasley's wonderful negotiations, and he provided this

19    information to the government so that way we could weigh that

20    and come to this determination.

21           But when she sits down and she talks to probation and

22    she says that she's from a wonderful family, very supportive

23    family, and then now she can't rely upon them, there's

24    something lost in the communication.  Either she was providing

25    misinformation to probation or she was providing misinformation

10:27  1    to the Court.

2              Regardless, one thing I can say positive about this

3    community, I think there's only one, is that they take care of

4    one another.  I think that is something that we have seen in

5    virtually every single sentencing, that they do take care of

6    one another.  That's the only positive thing I can say about

7    this criminal enterprise.

8              Your Honor, nine months is incredibly generous to a

9    woman who should be going to prison for much longer but for her

10   attorney negotiating down.  So both parties are asking the

11   Court for a nine-month sentence.

12             THE COURT:  Okay.  I'm also going to add that in

13   looking at my charts in terms of sentence disparities, other

14   persons who were facing the guideline range of 30 to 37 months

15   have received 11 months, also 18 months as well, and I know we

16   take in some of the circumstances of people, and I've done that

17   with respect to kids as well, but you do have one of the higher

18   ones with respect to the life insurance policies.

19             And then the ones who came before you, their offense

20   levels, even though there was a plea agreement that made the

21   offense levels higher, I made sure that probation had to

22   calculate everybody's offense level because I wanted to know

23   who might come out actually lower.  And the ones we've just

24   sentenced, they either matched the lower end or either were

25   actually lower than what was in the plea agreements, so they

10:28  1    should have been given some grace in that regard.

2          So having calculated and considered the advisory

3    sentencing guidelines and having also considered the relevant

4    statutory sentencing factors contained in 18 U.S.C.

5    Section 3553(a), it is the judgment of the Court that the

6    defendant Rachel McNally will be committed to the custody of

7    the Bureau of Prisons for the period of nine months.

8          You'll also pay restitution in the amount of $14,832

9    to this Court, and that restitution is due immediately and the

10    interest on restitution is waived.

11          If you don't have the ability to pay a fine -- you

12    don't have the ability to pay a fine, it appears, so your fine

13    is waived, but you'll have a $100 mandatory special assessment

14    fee.

15          Once you are released, you'll be on two years of

16    supervised release.  You need to report to probation in the

17    district to which you are released, and that will be within 72

18    hours.

19          In addition to the other conditions that I gave you,

20    any unpaid restitution will be paid at a rate of not less

21    than $100 per month and that begins in 30 days after your

22    release from imprisonment.

23          Again, I remind you that under your plea agreement,

24    you agreed to waive the right to contest the conviction or the

25    sentence.  If you decided to do so, you would need to do so in

10:29   1    a timely manner with respect to your lawyer or yourself.

2          So do you understand your appeal rights were waived in

3    your plea agreement and do you understand if you were going to

4    appeal for any reason, you would still need to do so timely --

5          DEFENDANT RACHEL McNALLY:  Yes, Your Honor.

6          THE COURT:  -- in accordance with the Federal Rules of

7    Criminal Procedure and any statute?  Any objection to the form

8    of the sentence?

9          MR. MAY:  No, Your Honor.

10         MR. BEASLEY:  No, Your Honor.

11         THE COURT:  Okay.  Is there a particular date for

12   reporting that is better for you based on your children's

13   status, in terms of getting their medical care and everything

14   established with someone else?

15         DEFENDANT RACHEL McNALLY:  I'll just have to prepare

16   my family and see what I can get together.

17         THE COURT:  Okay.  So do you want to wait 60 days?

18         DEFENDANT RACHEL McNALLY:  I don't know what to do

19   because I don't know what I can do myself.  I have to call

20   people and find out when they can be home.

21         THE COURT:  I understand that.  But how long -- that

22   shouldn't take more than 60 days, then, right?

23         DEFENDANT RACHEL McNALLY:  No, it shouldn't.  Maybe

24   less is what I'm saying.  I don't want to prolong this.

25         THE COURT:  Okay.  You don't want to.  Okay.  So I'll

10:30  1    just say report not before 30 days.

2              MR. BEASLEY:  Thank you, Your Honor.

3              THE COURT:  Thank you.

4              MR. MAY:  Thank you, Your Honor.

5         (Proceedings concluded at 10:31 a.m.)

6                        *   *   *   *   *

1  UNITED STATES OF AMERICA                          )
                                                     ) ss:
2  DISTRICT OF SOUTH CAROLINA                        )

3

4                    C E R T I F I C A T E

5      I, Carly L. Horenkamp, Certified Shorthand

6  Reporter in and for the United States District Court for the

7  District of South Carolina, do hereby certify that I was

8  present at and reported in machine shorthand the proceedings

9  had the 21st day of August, 2019, in the above-mentioned court;

10 and that the foregoing transcript is a true, correct, and

11 complete transcript of my stenographic notes.

12     I further certify that this transcript contains

13 pages 1 - 42.

14     IN WITNESS WHEREOF, I have hereunto set my hand at

15 Columbia, South Carolina, this 11th day of October, 2019.

16

17

18                    /s/ Carly Horenkamp

19                    Carly L. Horenkamp, RDR, CRR, CRC
                      Certified Shorthand Reporter

20

21

22

23

24

25